# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES T. DAVIS, | CASE NO. 1:10-cv-01184-LJO-GBC (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DENYING MOTIONS FOR PRELIMINARY INJUNCTION |
| v. | |
| CLARK J. KELSO, et. al., | (Docs. 10, 11, 12, 13) |
| Defendants. | DEADLINE THIRTY DAYS |

I.  **Procedural History**

Charles T. Davis ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 12132 (Americans with Disabilities Act). This action was filed on July 1, 2010. (Doc. 1). On September 16, 2010, Plaintiff filed two motions for injunctive relief. (Docs. 10, 11). On November 9, 2010, and November 29, 2010, Plaintiff filed renewed motions for emergency injunctive relief. (Docs. 12, 13). Plaintiff is currently housed at Pleasant Valley State Prison (PVSP) and the events that give rise to the current requests for injunction occurred while a prisoner at PVSP. In his original complaint, Plaintiff brings six claims: 1) deliberate indifference regarding Valley Fever; 2) ongoing breech of settlement agreement; 3) fraudulent confiscation of single cell status; 4) need for reasonable accommodation to his satisfaction or comfort under the Americans with Disabilities Act; 5) unconstitutional regulations regarding limitations on the amount of personal property and how to dispose of personal property when it exceeds limitations; 6) state claims of breach of affirmative duty by disturbing the

1

soil and increasing Valley Fever risk. (Doc. 1).

II.   **Summary of Motions for Preliminary Injunction**

    A.   **First Motion for Emergency Injunctive Relief Filed on September 16, 2010**

According to Plaintiff, on August 20, 2010, Dr. Tahepour renewed Plaintiff's pain medication of morphine sulphate. (Doc. 10 at 1). The renewal of the medication was a result of his administrative appeal (# PVSP-27-10-13272), where he successfully argued that the warden could not arbitrarily suspend all inmate's morphine sulphate prescriptions simply because an inmate in a different yard died of a morphine sulphate overdose. (Doc. 10 at 1-2). Plaintiff states that he was originally prescribed "SR # 30" for the morning which is a slow release pain medication that lasts twelve hours and "IR # 15" in the afternoon which is fast acting and intended to last till the evening and an "SR # 15" slow release for the night. However, Dr. Tahepour incorrectly prescribed Plaintiff to "IR # 15" three times a day. (Doc. 10 at 2-3). Plaintiff states that although Dr. Tahepour renewed the pain prescription "she stated she didn't know what the other doctors would do." (Doc. 10 at 2). Plaintiff filed a complaint against Dr. Tahepour for refusing to renew the pain prescription for approximately thirty days. (Doc. 10 at 2-3).

After filing approximately five administrative appeals to correct an error in his pain prescription, Plaintiff saw Dr. J. Chokatos on September 14, 2010. (Doc. 10 at 3). After informing Dr. Chokatos of the error in the pain prescription, Dr. Chokatos ignored Plaintiff. (Doc. 10 at 3). After the medical examination, Dr. Chokatos informed Plaintiff that he was stopping Plaintiff's morphine. (Doc. 10 at 4). After Plaintiff inquired why, Dr. Chokatos responded that it was "too dangerous" and that his conclusion was based on medical findings. (Doc. 10 at 4). Plaintiff suggests that this conclusion contradicts the fact that Dr. Chokatos renewed the morphine sulfate prescription on June 21, 2010. (Doc. 10 at 4). Plaintiff asserts that on the same day, Dr. Chokatos "made an implied threat . . . of confiscating [Plaintiff's] wheelchair" and retaliated for Plaintiff filing a complaint against him. (Doc. 10 at 4). According to Plaintiff, Dr. Chokatos is currently seeking to re-classify Plaintiff's medical condition which will cause Plaintiff's medical aide to be confiscated. (Doc. 10 at 4).

Plaintiff seeks as injunctive remedy for the Court to maintain the status quo by preventing Plaintiff's morphine sulphate presciprion to expire without renewal and mandating that the Chief Medical Officer, Felix Igbinosa, Dr. Tahepour, Dr. Chokatos and Dr. Fortune be prevented from discontinuing Plaintiff's morphine. (Doc. 10 at 5).

### B. Second Motion for Emergency Injunctive Relief Filed on September 16, 2010

Plaintiff requests that Court orders various PVSP officials to issue a medical "Chrono" for Plaintiff to have a single-cell status. (Doc. 11 at 2). Plaintiff also requests that the Court orders Chief Medical Officer Dr. Igbinosa to provide a medical chrono to ensure that Plaintiff obtains the following: 1) lotion; 2) baby powder; 3) two extra sets of sheets; 4) extra underwear; 5) extra towels; 6) one plastic mattress; 7) reinstatement of a medical chrono listing Plaintiff's medical condition as permanent; 8) that Plaintiff be taken to a rheumotologist; 9) that Plaintiff's wheelchair and crutches not be confiscated; 10) that Plaintiff be allowed to shower alone with the lights off when he needs to shower according to his satisfaction and comfort during the entire year; 11) to consider inmates' input as to whether the medication of Lyrica and morphine sulphate is at an adequate dosage; 12) to stop smashing Plaintiff's medication; 13) to ensure that "no sneaky retaliation be taken" against Plaintiff by transferring him to another prison to frustrate the possibility of a successful injunction. (Doc. 11 at 2).

Plaintiff asserts that he needs extra privacy when showering so that fellow inmates do not watch him as he is "irrigating" his colostomy bag. (Doc. 11 at 4). Moreover, Plaintiff should be allowed to shower with the lights off because he has "mishaps" in the shower, which the Court will presume means bladder or stool related accidents in the shower. (Doc. 11 at 4). Due to difficulty maintaining control of his bodily functions, Plaintiff states that he needs two pairs of underwear. (Doc. 11 at 4). Plaintiff asserts that he "should be accommodate to [his] comfort and . . . satisfaction, and not that of the prison officials." (Doc. 11 at 4).

Plaintiff asserts that he is unable to walk more than three to four steps without excruciating pain and needs a wheelchair and crutches to get around to the toilet of his cell. (Doc. 11 at 5). Plaintiff asserts that his condition of Valley Fever, diabetes and HCV is permanent. (Doc. 11 at 6). Plaintiff asserts that he needs lotion because Valley Fever dries the skin and causes rashes and

3

fungus on the body. (Doc. 11 at 6). Plaintiff needs baby powder to combat the foul order of his cell as a result of the fecal discharges in his diapers. (Doc. 11 at 6).

### C. Third Motion for Emergency Injunctive Relief Filed on November 9, 2010

Plaintiff's third motion for injunctive relief reiterates his request to prevent prison officials from confiscating his wheelchair and crutches. (Doc. 12 at 1). Plaintiff asserts that he is unable to walk significantly and cannot get to chow hall to eat, cannot walk to obtain his life-saving insulin since he is a diabetic and cannot get to the toilet without difficulty. (Doc. 12 at 1). Plaintiff asserts that prison officials have issued a fraudulent report which will result in the confiscation of Plaintiff's wheelchair and crutches. (Doc. 12 at 2).

### D. Fourth Motion for Emergency Injunctive Relief Filed on November 29, 2010

Plaintiff's fourth motion for injunctive relief reiterates his request to prevent prison officials from confiscating his wheelchair and crutches. (Doc. 13 at 2). Plaintiff also asserts that he suffers from excruciating pain in his back, leg and anus as well as spasms in his legs, back and feet. (Doc. 13 at 3). Plaintiff asserts that he also has nerve damage in his left foot, swelling from gout, and that his having Valley Fever has exacerbated his medical conditions. (Doc. 13 at 3).

## III. Legal Standard

### A. Preliminary Injunctive Relief

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Resources Defense Council, Inc.*, 129 S. Ct. 365, 376 (2008) (citation omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 374 (citations omitted). An injunction may only be awarded upon a *clear showing* that the plaintiff is entitled to relief. *Id.* at 376 (citation omitted) (emphasis added). Federal courts are courts of limited jurisdiction and in considering a request for preliminary injunctive relief, the Court is bound by the requirement that as a preliminary matter, it have before it an actual case or controversy. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983); *Valley Forge Christian Coll. v. Ams. United for Separation of Church and*

*State, Inc.*, 454 U.S. 464, 471 (1982). Furthermore, the Court must have personal jurisdiction over the parties in order to issue an injunction against any individual and the Court may not enjoin individuals who are not yet served or before the court. *Zepeda v. United States I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983).

### B.    Americans with Disabilities Act

The treatment or lack of medical treatment for Plaintiff's condition does not provide a basis upon which to impose liability under the Americans with Disabilities Act ("ADA"). *Burger v. Bloomberg*, 418 F.3d 882 (8th Cir. 2005) (medical treatment decisions not basis for ADA claims); *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) (medical decisions not ordinarily within the scope of the ADA); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("The ADA does not create a remedy for medical malpractice."). Aside from defendants' medical treatment decisions of which plaintiff complains and which are not an appropriate basis upon which to predicate an ADA claim, plaintiff alleges no facts to show that any defendant participated in, or was otherwise responsible for, excluding him from numerous activities, programs, and benefits otherwise available to him. Therefore, plaintiff fails to state a cognizable claim for violation of his rights under Title II of the ADA.

Moreover, claims under the ADA are not cognizable against defendants in their individual capacities and Plaintiff cannot prevail on a motion for preliminary injunctive relief against the individuals listed in his motion for preliminary injunction. *See Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) (plaintiff cannot sue state officials in their individual capacities to vindicate rights created by Title II of the ADA), *cert. denied*, 537 U.S. 1104, (2003); *Walker v. Snyder*, 213 F.3d 344, 346 (7th Cir. 2000) (no personal liability under Title II of ADA), *cert. denied*, 531 U.S. 1190 (2001); *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n. 8 (8th Cir. 1999) (en banc) (plaintiff cannot sue government actors in individual capacities for the alleged violations of the ADA).

### C.    Eighth Amendment Medical Treatment

A "difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim," *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir.

1981) (internal citation omitted), and a difference of opinion between medical personnel regarding treatment does not amount to deliberate indifference, *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). To prevail in an Eighth Amendment § 1983 claim, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1986) (internal citations omitted).

## IV.   Analysis

Although a plaintiff may offer his lay opinion as to the symptoms he is experiencing (e.g., pain, swollen legs, headache, etc.), a plaintiff may not offer his opinion as to the underlying medical causes for his symptoms and problems or the appropriate testing and treatment. In addition to his own opinion, most of which is inadmissible, Plaintiff has submitted documentary evidence in the form of medical records. However, Plaintiff has not provided any qualified interpretation of the records, and the records themselves do not contain any plain statements that plaintiff is under significant threat of irreparable harm without the injunction.

Plaintiff's demand for: 1) continuation of morphine sulphate; 2) continuation of a medical chrono stating that his condition necessitating the need for a wheel chair and crutches is permanent; and 3) a medical chrono for various toiletries amounts to a difference in medical opinion as to the nature and extent of Plaintiff's condition and the methodology of treatment. *See Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Plaintiff states that he is provided with a colostomy bag and diapers to address his bowel functions and Plaintiff's opinion that other items for his "satisfaction or comfort" are medically necessary items for his treatment does not rise to the level of stating an Eighth Amendment claim or an ADA claim. *See Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Burger v. Bloomberg*, 418 F.3d 882 (8th Cir. 2005) (medical treatment decisions not basis for ADA claims); *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) (medical decisions not ordinarily within the scope of the ADA); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("The ADA does not create a remedy for medical malpractice.").

In light of Plaintiff's failure to state any claim upon which relief may be granted, there is no actual case or controversy before the Court at this time, and Court lacks the jurisdiction to issue the orders sought by Plaintiff. *See Summers v. Earth Island Institute*, 129 S.Ct. 1142, 1149 (2009); *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1119 (9th Cir. 2009); 18 U.S.C. § 3626(a)(1)(A). Thus, Plaintiff has failed to demonstrate a likelihood of success on the merits or raise serious questions going to the merits regarding all four of his requests for injunctive relief.[1]

## V.  Conclusion

Based on the above analysis, the Court recommends that Plaintiff's four requests for injunctive relief filed on September 16, 2010, November 9, 2010, and November 29, 2010, be DENIED. (Docs. 10, 11, 12, 13).

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   May 10, 2011

UNITED STATES MAGISTRATE JUDGE

---

[1] In addition to Plaintiff's first request of injunctive relief to mandate continuation of pain medication amounting to a difference in medical opinion and not stating a claim for which relief can be granted, Plaintiff's request for pain medication is not a claim in Plaintiff's complaint and therefore the Court does not have jurisdiction over the claim. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983); *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982); *Zepeda v. United States I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983).