UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES T. DAVIS,<br><br>  Plaintiff,<br><br>  v.<br><br>CLARK J. KELSO, et al.,<br><br>  Defendants. | Case No.: 1:10-cv-01184-LJO-SAB (PC)<br><br>FINDINGS AND RECOMMENDATION REGARDING DEFENDANTS' MOTION TO DISMISS<br><br>[ECF No. 85, 86, 87, 89, 90] |

Plaintiff Charles T. Davis is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

**I.**

**PROCEDURAL HISTORY**

This action is proceeding on Plaintiff's claim for cruel and unusual punishment Defendants Cate and Yates for deliberate indifference to conditions of confinement by allowing Plaintiff to be transferred and housed at Pleasant Valley State Prison (PVSP) where he contracted Valley Fever.

On March 30, 2015, Defendants filed a motion to dismiss the complaint, along with a request for judicial notice. (ECF Nos. 85, 86.) Plaintiff filed an opposition on April 15, 2015, along with a separate request for judicial notice. (ECF Nos. 87, 90.) Defendants filed a reply on April 22, 2015. (ECF No. 89.)

1

## II.

## COMPLAINT ALLEGATIONS

Plaintiff alleges that he was transferred to Pleasant Valley State Prison (PVSP) which is within an "endemic area" containing Valley Fever.[1] Plaintiff is African-American and suffers from a "chronic" medical condition and claims that PVSP was informed that it needed to move inmates, such as Plaintiff, away from the endemic area.

Plaintiff contends the Grand Jury Reports (GJR) sent to Defendants Yates and Cate, expressly stated that African Americans are at a higher risk of Valley Fever compared to other nationalities. The GJR also found that inmates with diabetes have a 95% risk of contracting Valley Fever or that the risk is three times greater than non-chronic inmates.

Because Plaintiff was not warned of Valley Fever prior to his transfer to PVSP, or upon reception, he immediately filed a prison appeal requesting a transfer to prevent contracting Valley Fever. Plaintiff exhausted the administrative appeal process to the third level of review and his request was disregarded despite the fact that he was a high-risk African-American inmate with a chronic medical condition.

After Defendant Yates failed to order Plaintiff's transfer, he wrote letters directly to both of them informing them of the appeal number, and his need for transfer due to his medical condition. He then wrote directly to Defendant Cate informing him of the appeal and request to be transferred out of the endemic area before contracting Valley Fever. Defendant Cate did anything in response.

Since Plaintiff was not transferred out of PVSP as requested, he contracted Valley Fever which caused him to become very weak and tired, and he suffered extreme and severe physical pain in his joints and spasms throughout his body, extreme coughing, aggravation of his back, legs, and foot pain, emotional distress, skin discoloration, itching, and inability to sleep at night.

The GJR informed CDCR that their practice of transferring inmates who have never been exposed to Valley Fever into the endemic area subjected them to an increased risk because their

---

[1] Valley Fever, also known as coccidioidomycosis, is "'an infectious disease caused by inhalation of a fungus (Coccidioides) that lives in the soil of dry, low rainfall areas. It is spread through spores that become airborne when the dirt they reside in is disturbed by digging, construction, or strong winds. There is no direct person-to-person transmission of infection.'" Plata v. Brown, No. C01-1351 TEH, 2013 WL 3200587, *2 (N.D. Cal. June. 24, 2013).

immunity was too weak as compared to those who live in the surrounding areas and have already developed an immunity to the disease. Notwithstanding this information, the CDCR continued to, and is continuing to transfer, unsuspecting inmates into the endemic areas that have chronic medical conditions without warning.

In addition, during Plaintiff's stay at PVSP, before his exit, he personally witnessed prison yard personnel direct prisoner workers on the yard crew to routinely disturb the dirt by digging holes and taking no precautions to stop the spread of fungus by watering the ground or using anything else to stop its spread. Many times inmates have to lie face down in the dirt on the track when an alarm is activated. The GJR recommended ground cover to prevent the spread of the fungus but this is not done in practice.

## III.
## LEGAL STANDARD

A motion to dismiss brought pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim, and dismissal is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Conservation Force v. Salazar, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quotation marks and citations omitted). In resolving a 12(b)(6) motion, a court's review is generally limited to the operative pleading. Daniels-Hall v. National Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010); Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007); Schneider v. California Dept. of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)) (quotation marks omitted); Conservation Force, 646 F.3d at 1242; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The Court must accept the factual allegations as true and draw all reasonable inferences in favor of the non-moving party, Daniels-Hall, 629 F.3d at 998; Sanders, 504 F.3d at 910; Morales v. City of Los Angeles, 214 F.3d 1151, 1153 (9th Cir. 2000), and in this Circuit, pro se litigants are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012); Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012); Silva v.

Di Vittorio, 658 F.3d 1090, 1101 (9th Cir. 2011); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010).

## IV.

## DISCUSSION

Defendants move to dismiss the complaint on the grounds that the allegations are insufficient to show that any Defendant committed an act or omission that violated Plaintiff's rights and further that Defendants are entitled to qualified immunity. Since the issue of qualified immunity for the Eighth Amendment claims is dispositive in this instance, the Court will not address Defendants' argument that the allegations in the complaint are insufficient to state a claim.

### A. Qualified Immunity Legal Standard

The doctrine of qualified immunity protects government officials from civil liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To determine if an official is entitled to qualified immunity the court uses a two part inquiry. Saucier v. Katz, 533 U.S. 194, 200 (2001). The court determines if the facts as alleged state a violation of a constitutional right and if the right is clearly established so that a reasonable official would have known that his conduct was unlawful. Saucier, 533 U.S. at 200.

The district court is "permitted to exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 555 U.S. at 236. The inquiry as to whether the right was clearly established is "solely a question of law for the judge." Dunn v. Castro, 621 F.3d 1196, 1199 (9th Cir. 2010) (quoting Tortu v. Las Vegas Metro. Police Dep't. 556 F.3d 1075, 1085 (9th Cir. 2009)). In deciding whether officials are entitled to qualified immunity, the court is to view the evidence in the light most favorable to the plaintiff and resolve all material disputes in the favor of the plaintiff. Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

It is the plaintiff that bears the burden of demonstrating that the right was clearly established at the time that the defendants acted. May v. Baldwin, 109 F.3d 557, 561 (9th Cir. 1997). Defendants cannot be held liable for a violation of a right that is not clearly established at the time the violation

occurred. Brown v. Oregon Dep't of Corrections, 751 F.3d 983, 990 (9th Cir. 2014). A constitutional right is clearly established when its contours are "sufficiently clear [so] that a reasonable official would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739 (2002). In light of the preexisting law the lawfulness of the officials act must be apparent. Hope, 536 U.S. at 739. The court is to look to the state of the law at the time the defendants acted to see if it gave fair warning that the alleged conduct was unconstitutional. Id. at 741. The Supreme Court has emphasized that it is often difficult for an official to determine how relevant legal doctrine will apply to the specific situation that is faced and that is why qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law[.]" Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1049 (9th Cir. 2002).

The Supreme Court has repeated reminded us that we are not to define clearly established at a high level of generality. Ashcroft v. al-Kidd, 131 S.Ct. 2074, 2084 (2011). The qualified immunity inquiry is to be taken in light of the specific context of the case, not as a broad general proposition, Brosseau v. Haugen, 543 U.S. 194, 198 (2004), but "must be defined at the appropriate level of specificity[,]" Wilson v. Layne, 526 U.S. 603, 615 (1999).

 1. <u>Defendants are Entitled to Qualified Immunity as it is Not Clearly Established that Housing Plaintiff at PVSP Would Violate his Eighth Amendment Rights</u>

Qualified immunity shields an official from personal liability where he reasonably believes that his conduct complies with the law. Pearson, 555 U.S. at 244. " 'Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law.' " Stanton v. Sims, 134 S.Ct. 3, 5 (2013) (citations omitted). In determining whether the defendant is entitled to qualified immunity, the court is to determine if "a reasonable officer would have had fair notice that [the action] was unlawful, and that any mistake to the contrary would have been unreasonable." Chappell v. Mandeville, 706 F.3d 1052, 1056-57 (9th Cir. 2013) (quoting Drummond ex rel. Drummond v. City of Anaheim, 343 F.3d 1052, 1060–61 (9th Cir. 2003)).

In determining if the law is clearly established we first look to binding precedent. Chappell, 706 F.3d at 1056. If there is none on point, we look to other decisional law, including the law of other

circuits and district courts. Id. at 1056; Osolinski v. Kane, 92 F.3d 934, 936 (9th Cir. 1996). The Court finds no Supreme Court or published Ninth Circuit case that has addressed whether an inmate's environmental exposure to Valley Fever or any other environmental organism would be a violation of the Eighth Amendment.

In the related case of Jackson, this Court issued findings and recommendations finding that Defendants are entitled to qualified immunity for housing inmates in areas in which Valley Fever spores are prevalent. Plaintiff's allegations here are substantially identical to the complaint in Jackson. Plaintiff is alleging that Defendants "knew or should have known that the transfer into the endemic area without warning would result in substantial and serious harm to Plaintiff [and] constitutes clear and convincing evidence of deliberate indifference." (ECF 68 at 7.) "The [Grand Jury Report] informed the CDCR directorate that their practice of transferring inmates who have never been exposed to [Valley Fever] into the hyperendemic area subjected them to an increased risk because their immunity was too weak as compared to those who live in the surrounding area [and] have already developed an immunity to the [Valley Fever]." (Id. at ¶ 9.) Therefore, the question to be addressed here is the same as in Jackson. In the corrected memorandum decision and order, Judge O'Neill found that under any definition of the constitutional right in this instance, Defendants are entitled to qualified immunity. Jackson v. Brown, No. 1:13-cv-01055-LJO-SAB, __ F.Supp.3d __, 2015 WL 5732826, at *1 (E.D. Cal. Sept. 17, 2015).

This Court has found, and Judge O'Neill has held that the constitutional right at issue here was not clearly established. Jackson, 2015 WL 5732826 at 8; see also Smith v. Schwarzenegger, No. 1:14-cv-0060-LJO-SAB, __ F.Supp.3d __, 2015 WL 5915353 (E.D. Cal. October 7, 2015) (finding defendants entitled to qualified immunity on similar Eighth Amendment claims); Nawabi v. Cates, No. 1:13-cv-00272-LJO-SAB, 2015 WL 5915269 (E.D. Cal. October 7, 2015) (same); Gregge v. California Department of Corrections, No. 1:15-cv-00176-LJO-SAB (E.D. Cal. Oct. 7, 2015) (same); Hines v. Youssef, No. 1:13-cv-0357-AWI-JLT, 2015 WL 2385095, at *10 (E.D. Cal. May 19, 2015) (finding defendants entitled to qualified immunity because the categories of race and other forms of respiratory exclusion criteria were not

clearly established).[2]  In Jackson the court found that "the circumstances in which an inmate's exposure to cocci while incarcerated may support an Eighth Amendment claim are not clear." Id. at *2.  The court found no controlling authority to place Defendants on notice that housing inmates at high risk of developing disseminated disease in areas in which Valley Fever is endemic would be unlawful. Id. at *4-5. "Critically, judges have disagreed as to whether allegations that an inmate's ethnicity increases the risk of contracting Valley Fever and developing disseminating Valley Fever states an Eighth Amendment claim. Judges also have disagreed as to whether an inmate's allegations that medical conditions increase the risk of contracting Valley Fever and developing disseminated Valley Fever states an Eighth Amendment claim." Id. at *5.

Even where the actions involved allegations materially identical to those raised in this action, courts have granted summary judgment for Defendants reasoning that "[b]y placing a prison and other extensive facilities in the PVSP location, attended by prison employees, officials, and support personnel, as well as inmates, society plainly tolerates the health risks of that location." Moreno v. Yates, No. 1:07-cv-01404-DGC, 2010 WL 1223131, *2 (E.D. Cal March 24, 2010).

A review of the case law within this district shows that there is an "obvious, legitimate, and reasonable disagreement among judges" regarding what would be required to state a claim under the circumstances alleged in the complaint. Jackson, 2015 WL 57532826, at *8.  The Jackson court found that "[e]ven assuming Defendants' conduct was unlawful . . . the disagreement among judges with regard to analogous Valley Fever cases brought by inmates in San Joaquin Valley prisons establishes that the right at issue here was not sufficiently clear such that Defendants had 'fair warning' that their conduct was unlawful." Id. (quoting Flores v. Morgan Hill Unified School Dist., 324 F.3d 1130, 1137 (9th Cir.2003)). Due to this, the court could "find that Defendants' conduct was obviously illegal (much less overwhelmingly so) because "[t]he state of the law was at best undeveloped." Jackson, 2015 WL 57532826 at *8 (quoting Wilson, 526 U.S. at 617).  While there has been substantial litigation of the issue within this District, no consensus has emerged. Jackson at *8.  "Although that litigation has shed some light on the issue, no authority has fleshed out at what point the risk of harm from Valley Fever becomes

---

[2] On May 19, 2015, District Judge Anthony W. Ishii also found that Defendants were entitled to qualified immunity from suit in an action in which an inmate challenged his confinement at Wasco State Prison due to the high probability of exposure to Valley Fever.  Hines v. Youssef, No. 1:13-cv-0357-AWI-JLT, 2015 WL 2385095 (E.D. Cal. May 19, 2015).

7

sufficiently substantial for Eighth Amendment purposes." Id. (internal punctuation and citations omitted). The court found that the defendants were entitled to qualified immunity. Id.

Accordingly, the Court finds that Defendants are entitled to qualified immunity for housing Plaintiff at PVSP and recommends granting Defendants' motion to dismiss the Eighth Amendment claims on this ground.[3]

## V.

## RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that Defendants' motion to dismiss the second amended complaint be GRANTED.

This Findings and Recommendation is submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with this Findings and Recommendation, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **November 10, 2015**

UNITED STATES MAGISTRATE JUDGE

---

[3] Based on this Court's present ruling, it is unnecessary to address the parties' requests for judicial notice as they do not change the analysis.  (ECF Nos. 86, 90.)  Defendants request the Court to take judicial notice the November 20, 2007 policy regarding "Exclusion of Inmate-Patients Susceptible to Coccidioidomycosis from Highest Risk (Hyperendemic) Area Institutions," and Plaintiff requests judicial notice of certain personal medical reports from 2010.